

O'Melveny & Myers LLP  
Times Square Tower  
7 Times Square  
New York, NY 10036-6537

T: +1 212 326 2000  
F: +1 212 326 2061  
omm.com

August 3, 2020

**Mark W. Robertson**  
D: +1 212 326 4329  
mrobertson@omm.com

<u>**VIA ECF**</u>

The Honorable Rachel P. Kovner  
U.S. District Court for the Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, NY 11201

Re:   <u>*Banco Santander (Brasil), S.A. v. American Airlines, Inc.*, Case No. 1:20-cv-03098</u>

Dear Judge Kovner:

On behalf of Defendant American Airlines, Inc. ("American"), we write pursuant to Rule IV(A)(1)–(2) of Your Honor's Individual Practice Rules to request permission to file a motion to dismiss Plaintiff's complaint for failure to state a claim.

Plaintiff Banco Santander (Brasil), S.A. ("Plaintiff") seeks a declaratory judgment that it is entitled to terminate an agreement with American based on the agreement's force majeure provisions. Those provisions protect from liability a party who is unable to perform its contract obligations because of a force majeure event, and allow Plaintiff to terminate if a force majeure event precludes American from performing any contract obligation for longer than 90 days. Plaintiff contends that American's temporary cessation of flights to Brazil because of the COVID-19 pandemic is such a failure to perform because of force majeure. The problem for Plaintiff, however, is that flying to Brazil without interruption is not one of American's obligations under the agreement. In other words, temporarily ceasing flights to Brazil is not a breach of the contract, so the force majeure clause—the only function of which is to excuse liability for breach—does not apply. The agreement is of course not agnostic about whether American flies to Brazil. To the contrary, a provision entitled "Cessation of Services" allows Plaintiff to terminate (but not sue for breach) if American falls below a specified level of service over a calendar year. But that is the only contract provision governing and permitting termination based on American's level of flight service to Brazil, and it is indisputably not satisfied here.

Plaintiff's alternative claim under the frustration of purpose doctrine also fails. This doctrine only applies where an uncontemplated event destroys the agreement's purpose. Here, however, the parties specifically contemplated the possibility of a significant reduction or cessation in American's flights to Brazil and included a provision addressing that possibility. Plaintiff cannot now avoid that provision by simply ignoring it.

## Background and Procedural History

This case arises out of the December 9, 2016 AAdvantage Program Participation Agreement (the "Agreement") between American and Plaintiff. Under the Agreement, Plaintiff issues co-branded credit cards, jointly sponsored by Plaintiff and American, to residents of Brazil, who



then earn reward miles in American's frequent flier program when they make purchases. (Compl. ¶ 2.)  The Agreement provides that Plaintiff will purchase a specific number of miles per year from American and that American will post miles to cardholder accounts as they are earned.  (*Id.*)

Section 23 is a force majeure provision that allows either party to avoid breach-of-contract liability for failure to perform any contract obligation if the failure to perform was caused by a Force Majeure Event, and the party seeking to invoke the clause gives the other party prompt notice.  Section 20.4.5, in turn, allows Plaintiff to terminate the Agreement if "pursuant to Section 23 American delays performance or fails to perform due to a Force Majeure Event" and the delayed performance lasts 90 days.  (Compl. Ex. A § 20.4.5.)

American never invoked Section 23's force majeure provision during the current COVID-19 pandemic.  Yet on June 29, 2020, in year four of the 10-year Agreement, Plaintiff sent a letter notifying American of its intent to terminate the Agreement.  (Compl. Ex. B.)  Plaintiff argued that because American had temporarily ceased flights between the United States and Brazil, Plaintiff was entitled to terminate the Agreement under Section 20.4.5.  (*Id.* at 2.)  In response, American notified Plaintiff that it disputed Plaintiff's right to terminate the Agreement.  (Compl. ¶ 35.)  Shortly after, on July 10, 2020, Plaintiff filed its Complaint, attaching and incorporating by reference the Agreement and seeking a declaratory judgment (i) that the Agreement was terminated pursuant to Section 20.4.5, or (ii) in the alternative, that under the frustration of purpose doctrine, Plaintiff is excused from continuing to perform.

## Legal Argument

Plaintiff fails to state a claim for relief based on the plain language of the Agreement.  Section 20.4.5, the provision relied on by Plaintiff, does not apply here because as Plaintiff's own allegations establish, American did not, "pursuant to Section 23," "delay[] performance or fail[] to perform" its obligations under the Agreement for 90 days "due to a Force Majeure Event."

As the language of Section 23 confirms, its purpose is to protect the party who is unable to perform a contract obligation because of a Force Majeure Event—if that party gives prompt notice, the party escapes breach-of-contract liability for what would otherwise be a breach of the Agreement.  If American had thought that the COVID-19 pandemic were causing it to fail to perform any contract obligation, it would have had every incentive to invoke Section 23 to avoid liability.  And if Plaintiff really believed American was breaching its obligations but failed to invoke Section 23, it could have (and presumably would have) sued for breach of contract.

The Agreement sets forth in detail American's contractual obligations, which require American to administer the AAdvantage Program, enroll cardholders in that program, sell miles to Plaintiff at the established rates, invoice Plaintiff for purchased Miles, post miles to the cardholder accounts, grant special status to certain cardholders, field customer inquiries about the AAdvantage Program, provide advertising support, and abide by intellectual property, data security, and confidentiality provisions.  (*See, e.g.*, Compl. Ex. A §§ 5-7, 10-12, 14-17.)  But continuous flying to Brazil is not one of American's obligations under the Agreement—thus, an interruption of service to Brazil is not a breach of the contract, which means the force majeure clause (a liability shield for conduct that would otherwise constitute a breach) does not apply.  Accordingly, American's temporary cessation of flights to Brazil—Plaintiff's only basis for termination (Compl. ¶ 3, 38-39)—does not authorize Plaintiff to terminate under Section 20.4.5.



The Agreement, however, does specifically address American's required level of flights to Brazil.  Section 20.4.6—the very next section after the one Plaintiff invokes—authorizes Plaintiff to terminate (but not sue for breach of contract) if American substantially decreases flights to Brazil relative to 2016 when the parties negotiated the Agreement. (Compl. Ex. A § 20.4.6.)  That provision, aptly labeled "Cessation of Services," is tied to American's Market Share—a defined term that compares available seats on American flights between the United States and Brazil and available seats on competitor U.S.-based airlines' Brazil flights.  And it allows Plaintiff to terminate only when American's Market Share is reduced by a specific amount *for a full calendar year* relative to 2016.  (*Id.*; see also id. § 1 (defining "Market Share").)  It is *that* provision that dictates when Plaintiff can terminate the Agreement based on American's level of service to Brazil.  *See John Hancock Mut. Life Ins. Co. v. Carolina Power & Light Co.*, 717 F.2d 664, 669 n. 8 (2d Cir.1983) ("[D]efinitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary.").  But Plaintiff does not even mention that provision in its Complaint, much less allege that American triggered it.  And if Plaintiff's reading of the Agreement were adopted, the Cessation of Services provision would be superfluous, an impermissible inference under New York law.  *See LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) ("An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . will be avoided if possible." (internal quotation marks omitted)).

There is likewise no basis for applying the frustration of purpose doctrine to excuse Plaintiff from performing its obligations.  Frustration of purpose "refers to a situation where an unforeseen event has occurred, which, in the context of the entire transaction, destroys the underlying reasons for performing the contract."  *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Envases Venezolanos, S.A.*, 740 F. Supp. 260, 266 (S.D.N.Y. 1990) (internal quotation marks omitted).  A party may not "abrogate a contract unilaterally, merely upon a showing that it would be financially disadvantageous to perform it."  *Id.* (internal quotation marks omitted).  Rather, frustration of purpose is "limited to instances where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party."  *Bierer v. Glaze, Inc.*, 2006 WL 2882569, at *6 (E.D.N.Y. Oct. 6, 2006) (internal quotation marks omitted).

Far from "wholly unforeseeable," the possibility that American would reduce or cease flying between the United States and Brazil for some period is expressly addressed in the Agreement.  Again, Section 20.4.6 sets out a specific process by which Plaintiff can terminate the Agreement upon 120 days' notice if American's flights vis-à-vis certain other airlines fall below a certain percentage measured over an entire calendar year.  Plaintiff cannot now seek to avoid that specific procedure and the plain terms of the Agreement by invoking the frustration of purpose doctrine.  *See Bank of Am. Nat'l Tr. & Sav. Ass'n,* 740 F. Supp. at 266.

Sincerely,

*/s/ Mark W. Robertson*

Mark W. Robertson
of O'MELVENY & MYERS LLP