UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BANCO SANTANDER (BRASIL), S.A.,

                Plaintiff,

                                                     MEMORANDUM AND ORDER

        -against-                                      20-CV-3098 (RPK) (RER)

AMERICAN AIRLINES, INC.,

                Defendant.
------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Plaintiff Banco Santander (Brasil), S.A. brought this action against Defendant American Airlines, Inc. seeking a declaratory judgment that a contract between the parties has been terminated or, alternatively, that it is excused from further performance under the contract. American Airlines has moved to seal portions of the Complaint and an attached contract-exhibit that reveal dollar figures and related amounts that it maintains would harm its competitive position if made public. I find that the limited redactions proposed by American Airlines meet the requirements for sealing under the common law and the First Amendment. I further find that the contract's confidentiality provisions do not require that the relevant provisions remain unsealed. Accordingly, defendant's motion to partially seal the Complaint and the contract-exhibit is granted and plaintiff is instructed to refile the Complaint and exhibit with defendant's proposed redactions.

## BACKGROUND

      Plaintiff Santander and defendant American Airlines are parties to a contract (the "Agreement") under which Santander issues co-branded airline credit cards to consumers in Brazil. When cardholders make purchases using the cards, they earn miles that are redeemable on

1

American Airlines flights. Under the Agreement, Santander purchases miles from American Airlines at an established rate per mile, which are then posted to cardholder accounts to cover the miles cardholders earn through their purchases. The Agreement requires Santander to purchase a minimum quantity of miles from American Airlines every year. It also contains a "Force Majeure" provision that shields the parties from liability for delay or failure to perform their contractual obligations due to the occurrence of certain extraordinary events, such as war, fires, strikes, work stoppages, or other "acts of God." However, the Agreement provides that if American Airlines "delays performance or fails to perform due to a Force Majeure Event, and such delay continues for a period of ninety (90) days, then [Santander] may terminate this Agreement immediately by providing written notice to American." Compl. Ex. A § 20.4.5 (Dkt. #14-5).

This lawsuit concerns whether Santander is entitled to terminate the Agreement under the Force Majeure clause or under common law doctrines. When the COVID-19 pandemic decimated demand for air travel, American Airlines stopped operating flights between Brazil and the United States for more than 90 days. Santander then notified American Airlines that it intended to terminate the Agreement based on the Force Majeure clause. American Airlines, however, disputes that a termination event has occurred and maintains that Santander must continue to perform under the Agreement—including by purchasing the minimum quantity of miles required by the Agreement every year. Santander seeks a declaratory judgment that the Agreement has been terminated based on its invocation of the Force Majeure clause. In the alternative, Santander seeks a declaratory judgment that it is excused from further performance of its obligations in the Agreement under the common law doctrine of frustration of purpose, which can discharge a party's contractual duties when a "wholly unforeseeable event renders the contract valueless to one party." *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974).

2

When Santander filed this suit, it included a copy of the Agreement as Exhibit A to the Complaint and referred to some of the Agreement's provisions in the body of the Complaint itself. American Airlines filed a letter seeking to have the Complaint and Exhibit A placed under seal. *See* Def.'s Ltr. (Dkt. #8). I temporarily placed Exhibit A under seal to allow the parties to brief whether the requirements for sealing were met. *See* Order (July 16, 2020). I also temporarily placed the original unredacted Complaint under seal, while leaving on the public docket a lightly redacted version of the Complaint that reflects American's proposed redactions. *See* Order (July 17, 2020).

American has now filed its motion to seal, which asked that Santander be required "to re-file its Complaint and Exhibit A with the minimal redactions proposed by American." *See* Mem. of L. in Supp. of Def.'s Mot. to Seal ("Def.'s Mem.") 8 (Dkt. #14-1). The proposed redactions obscure dollar-figures and related amounts in the Complaint and Exhibit A, leaving nearly all of both documents unredacted. *See* Notice of Mot. to Seal Exs. 1-2 (Dkt. #14-4, 14-5). In support of its motion, American states that the Agreement is the product of "extensive negotiations," and that American "is a party to similar agreements with other financial institutions around the world, which are also the result of extensive negotiations." Def's Mem. 1. American principally argues that "[b]ecause the pricing terms of American's [co-branded credit card] agreements vary from financial institution to financial institution," American would be competitively disadvantaged by the disclosure of the precise terms of its agreement with Santander, because the disclosures would "mak[e] it difficulty for American to negotiate better terms with other partners or potential partners." *Id.* at 5-6. Santander opposes the sealing and argues principally that American has not sufficiently substantiated its arguments regarding competitive harm. *See* Pl.'s Opp'n to Def.'s Mot. to Seal ("Pl.'s Mem.") 5-7 (Dkt. #15).

DISCUSSION

The limited redactions proposed by American Airlines meet the requirements for sealing under the common law and the First Amendment.

1. The Common Law Framework

American's proposed sealing is justified under the common law framework. Under the common law, a presumption of access attaches to "judicial documents"—those documents filed with the court that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")); *see Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019). The parties agree that the Complaint is a judicial document. *See* Pl.'s Mem. 3; Def.'s Mem. 4; *see Bernstein v. Bernstein Litowitz Berg & Grossman LLP*, 814 F.3d 132, 139-40 (2d Cir. 2016). So is the contract attached to the Complaint. Because the document is appended to the Complaint, it is "part of the pleading," *see Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)). Moreover, because the document is at the heart of this dispute, the contract is "relevant to the performance of the judicial function and useful in the judicial process," *Lugosch*, 435 F.3d at 119.

Despite the presumption of access, the common law framework allows the sealing of judicial documents or portions thereof when sealing is justified based on countervailing interests. *Id.* at 124. In order to determine whether countervailing considerations justify sealing, a court must balance the weight of the presumption of access to particular materials against the weight of the countervailing factors supporting sealing. The weight of the presumption of access, in turn, depends on the "role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Mirlis v. Greer*, 952

F.3d 51, 59 (2d Cir. 2020) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")). When the material at issue "play[s] only a negligible role in the performance of Article III duties," the weight of the presumption "is low and amounts to little more than a prediction of public access absent a countervailing reason." *Amodeo II*, 71 F.3d at 1050. But when the material "directly affect[s] an adjudication," *id.* at 1049, or is "used to determine litigants' substantive legal rights," *Bernstein*, 814 F.3d at 142, the presumption of access "can be overcome only by 'extraordinary circumstances,'" *ibid.* (quoting *Amodeo II*, 71 F.3d at 1048).

Here, the presumption of access to the limited materials that American seeks to seal deserves limited weight. American seeks to seal only the "amounts/numbers" in certain provisions of the Agreement and references to those figures in the Complaint. Def.'s Mem. 1-2. Those "amounts/numbers" include "the rate per mile that [Santander] must pay, the number of miles that [Santander] must purchase from American, the amount of compensation for providing cardholders with elite airline status, and the total dollar amount of miles that [Santander] must purchase each year." Def's Mem. 1. The presumption of access applicable to these figures is not especially weighty because the precise amounts at issue appear to have little or no bearing on the merits of Santander's case. Santander's case turns on the construction of the Agreement's Force Majeure provision, which American does not seek to redact, and on the applicability of the frustration of purpose doctrine. The information American seeks to seal appears to have little or no discernable relationship to the resolution of those issues and therefore "play[s] only a negligible role in the performance of Article III duties." *Amodeo II*, 71 F.3d at 1050; *see Alcon Vision, LLC v. Lens.com*, No. 18-CV-407 (NG), 2020 WL 3791865, at *11 (E.D.N.Y. July 7, 2020) (concluding that exhibits could remain under seal because they were "unrelated to determining the parties' substantive rights"); *Graczyk v. Verizon Commc'ns, Inc.*, No. 18-CV-6465 (PGG), 2020 WL 1435031, at *9

(S.D.N.Y. Mar. 24, 2020) (finding the presumption of public access to "financial information" in judicial documents deserved little weight because the information was not relevant to the issues decided by the court); *Oliver Wyman, Inc. v. Eielson*, 282 F. Supp. 3d 684, 706 (S.D.N.Y. 2017) (explaining that the weight of the presumption was limited because the information redacted was "largely collateral to the factual and legal issues"); *KeyBank Nat'l Assoc. v. Element Transp. LLC*, No. 16-CV-8958 (JFK), 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) (noting that document's "irrelevance to the issues before the Court . . . places the presumption of public access at the nadir of the continuum of the weight to be given to [it]"); *Standard Inv. Chartered v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. 07-CV-2014 (SWK), 2008 WL 199537, at *8 (S.D.N.Y. Jan. 22, 2008) (finding judicial documents entitled to a minimal presumption of public access because they "played a negligible role in the resolution of [plaintiff's] motion for reconsideration"). Similarly, because the dollar figures and amounts in the provisions identified by American have little or no bearing on the merits of the parties' dispute, sealing that information will not meaningfully hinder those "monitoring the federal courts," *Bernstein*, 814 F.3d at 142 (quoting *Lugosch*, 435 F.3d at 119), because the limited information that American seeks to seal will shed no light on "the appropriateness of the Court's decision," *Geltzer v. Andersen Worldwide, S.C.*, No. 05-CV-3339 (GEL), 2007 WL 273526, at *4 (S.D.N.Y. Jan. 30, 2007).

      Santander argues that the information American Airlines seeks to seal may be relevant to the adjudication of the case because "the large financial stakes" are "one reason, among many, why the Court should exercise its 'discretion' to 'declare the rights' of the parties here under the Declaratory Judgment Act." Pl.'s Mem. 5 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007)). Santander's intent to offer "many" reasons why the Court should declare the rights of the parties under the Declaratory Judgment Act casts some doubt on whether that

6

particular rationale will actually be relevant. In any event, it seems exceedingly unlikely that analysis of whether to grant a declaratory judgment would turn on the precise terms of the parties' bargain rather than the simple fact that "tens of millions of dollars" are at stake in this litigation. Pl.'s Mem. 1. Because the information American seeks to redact will play at most a negligible role in the adjudication of this case and is not of substantial value to those monitoring the federal courts, the weight of the presumption of access to that information is merely "a prediction of public access absent a countervailing reason," *Amodeo II*, 71 F.3d at 1050.

American's countervailing interests outweigh the presumption of access in this case. Even when the presumption of public access receives limited weight, "[t]he party opposing disclosure must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection." *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Here, the "countervailing reason" offered by American Airlines is the risk that disclosure of the Agreement's financial terms will harm its competitive position. Specifically, American argues that "[i]f the confidentiality of [the provisions at issue] is not maintained, then American could be competitively disadvantaged to a significant degree in any future contract negotiations." Def's Mem. 2 (citing Decl. of Priscila Soria Sanchez in Supp. of Def.'s Mot. to Seal ("Sanchez Decl.") ¶ 4 (Dkt. #14-2)). In support of this position, American submitted a declaration from Priscila Soria Sanchez, a Senior Manager of International Co-Brand Partnerships at American Airlines. The declaration states that because the pricing terms of American's co-branding agreements vary, if the financial terms of the Agreement were publicly known, it would provide leverage to American's other partners in future negotiations and make it difficult for American to negotiate better terms with those counterparties. Sanchez Decl. ¶ 4; *see* Def.'s Mem. 5-6. The declaration further avers that American's competitors could use this information to their

7

advantage in future negotiations by demanding similar compensation arrangements from their partners, removing any competitive advantage that American enjoys as a result of the Agreement. Sanchez Decl. ¶ 4; *see* Def.'s Mem. 6. Finally, the declaration notes that American "anticipates negotiating additional such [co-branded credit card] agreements in the future" and that they are "an important part of American's business model." Sanchez Decl. ¶ 2.

Santander argues that this claim of competitive harm is too speculative and conclusory to warrant sealing the information at issue. Pl.'s Mem. 5-7. But American has not merely asserted that disclosure will work some unspecified harm on its business. *Cf. Wells Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 414 (S.D.N.Y. 2014) (rejecting declaration's allegations of competitive harm because it "provide[d] no insight into, *inter alia*, how disclosure of the reinsurance agreement would cause competitive harm to [the party resisting disclosure]"). Instead, American has substantiated its allegation by clearly articulating how disclosure could advantage its counterparties and competitors. Courts have routinely found similar theories of competitive harm sufficient to defeat a presumption of access. *See, e.g., Graczyk*, 2020 WL 1435031, at *9; *Oliver Wyman*, 282 F. Supp. 3d at 706-07; *Playtex Prods., LLC v. Munchkin, Inc.*, No. 14-CV-1308 (RJS), 2016 WL 1276450, at *11 (S.D.N.Y. Mar. 29, 2016); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612-14 (S.D.N.Y. 1998). Indeed, American's explanation of competitive harm is better substantiated than those that are sometimes accepted as sufficient to warrant sealing in this context. *Cf., e.g.*, Order, *Delta Air Lines, Inc. v. Bombardier, Inc.*, No. 20-CV-3025 (GHW), (S.D.N.Y. May 27, 2020) (Dkt. #12); *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035-36 (S.D.N.Y. 1993). Accordingly, I find that American's allegation of competitive harm is a sufficiently powerful "countervailing reason" to overcome the mere

"prediction of public access" applicable to the financial terms at issue under the common law. *Amodeo II*, 71 F.3d at 1050.

2. First Amendment Framework

For similar reasons, American's limited sealing request satisfies the First Amendment. "[T]he public and the press have a 'qualified First Amendment right to . . . access certain judicial documents,'" including documents that are "'derived from or [are] a necessary corollary of the capacity to attend'" judicial proceedings as to which there is a First Amendment right of access. *Lugosch*, 435 F.3d at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91, 93 (2d Cir. 2004)). The Complaint and Exhibit A are subject to that qualified First Amendment right. *See Bernstein*, 814 F.3d at 139-40. But the First Amendment allows restrictions on public access when a court makes "specific, on the record findings" that limitations on access are "essential to preserve higher values and [are] narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). A court assessing whether "higher values" warrant sealing accordingly must conduct "an evaluation of [the] competing interests" at issue. *Green Mountain Chrysler Plymouth Dodge Jeep v. Crombie*, Nos. 2:05-CV-302/304, 2007 WL 922255, at *7 (D. Vt. Mar. 23, 2007) (citing *ABC, Inc. v. Stewart*, 360 F.3d 90, 100 (2d Cir. 2004)).

American's strong interest in the confidentiality of the contractual terms that American seeks to seal outweighs the First Amendment right of public access with respect to those terms. The interest in public disclosure of those terms is quite limited, because, as explained, *see supra* at 5-6, the material at issue is only tangentially related to the adjudication. *See Standard Inv. Chartered*, 2008 WL 199537, at *8. Accordingly, sealing this information will not impair the public's "ability to ascertain the substance of the particular proceedings." *Hartford Courant Co.*,

9

380 F.3d at 93. Nor is there a substantial public interest in the disclosure of the provisions at issue. *See Standard Inv. Chartered*, 2008 WL 199537, at *8. On the other hand, American's interest in maintaining the confidentiality of the relevant numbers is substantial. While Santander correctly observes that corporations lack *personal* privacy rights, Pl.'s Mem. 7 n.3 (citing *FCC v. AT&T Inc.*, 562 U.S. 397, 406 (2011)), corporations have a legitimate and well-recognized interest in keeping sensitive or proprietary information confidential. And where, as here, the material at issue could harm a corporation's competitive standing if disclosed, that interest can to justify limited redactions. *See KeyBank Nat'l Assoc.*, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017); *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 510-11 (S.D.N.Y. 2015); *Standard Inv. Chartered*, 2008 WL 199537, at *8. Furthermore, the proposed redactions are no greater than necessary to protect American's privacy interests. Accordingly, I conclude that American's proposed redactions are essential to preserving its interests in the protection of sensitive business information and are narrowly tailored towards that end, satisfying the requirements for sealing under the First Amendment.

3. The Confidentiality Provisions

Finally, the Agreement's confidentiality provisions do not require disclosure of the information that American seeks to seal. While Santander points out that the Agreement may be disclosed "when necessary for a Party to enforce a right or remedy under [the] Agreement," Pl.'s Mem. 8 (quoting Compl. Ex. A. § 17.13.2.4), publicly disclosing the financial terms at issue in this case is not necessary for Santander to enforce a right or remedy. The Agreement therefore does not require the disclosure of any information that American seeks to have placed under seal.

10

CONCLUSION

American Airlines' motion to partially seal the Complaint and Exhibit A is granted. Santander shall refile the Complaint and Exhibit A with American's proposed redactions as set forth in the exhibits filed with its Motion to Seal.

SO ORDERED.

      /s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated:      Brooklyn, New York
              August 21, 2020