UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

BANCO SANTANDER (BRASIL), S.A.,

           Plaintiff,

  -against-                             **MEMORANDUM AND ORDER**
                                                20-CV-3098 (RPK) (RER)

AMERICAN AIRLINES, INC.,

           Defendant.
-------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      Banco Santander (Brasil), S.A. ("Banco Santander") offers a credit card co-branded with American Airlines, Inc. Cardholders earn miles in American Airlines' frequent-flier program through their purchases. Banco Santander, in turn, pays the airline for those miles. Under the parties' agreement, the bank must buy a minimum number of miles each year, regardless of how many miles cardholders earn through their spending.

      When the COVID-19 pandemic struck, American Airlines temporarily suspended flights between Brazil and the United States. Banco Santander then sought to terminate the parties' agreement. After the airline disputed the bank's right to terminate, the bank filed this lawsuit. Banco Santander argues that it was entitled to terminate the parties' contract based on a clause permitting such termination if the airline failed to perform or delayed performance under the contract for more than 90 days due to a *force majeure* event. In the alternative, the bank argues that it is excused from further performance based on the common-law doctrine of frustration of purpose.

      American Airlines has moved to dismiss the complaint. The motion is granted in part. Banco Santander is not entitled to terminate the agreement under the *force majeure* termination

1

provision because American Airlines has not failed to perform or delayed its performance under the contract. But Banco Santander's allegation that unforeseeable consequences of the COVID-19 pandemic rendered the contract essentially worthless to the bank states a claim for frustration of purpose that is adequate to survive the airline's motion to dismiss.

## BACKGROUND

The following facts come from the complaint, incorporated documents, documents integral to the complaint, and documents amenable to judicial notice. The allegations in the complaint are "accept[ed] as true" on a motion to dismiss. *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 90-91 (2d Cir. 2021) (quoting *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188) (2d Cir. 2020)).

A.  **Factual Background**

1.  **The Parties' Agreement**

Banco Santander is a Brazilian bank. *See* Compl. ¶ 6 (Dkt. #1). American Airlines is an U.S. airline. *See id.* ¶ 7. In 2016, Banco Santander and American Airlines entered into a ten-year agreement that authorizes Banco Santander to offer a co-branded credit card. *See* AAdvantage Program Participation Agreement Ex. A, § 3.1 (Dkt. #22-1) ("Participation Agreement").

Banco Santander offers, issues, and administers the card. *See id.* §§ 3.1-3.2. The bank identifies its cardholders to American Airlines, *see id.* §§ 6.1, 8.1, which enrolls these cardholders in its "AAdvantage" rewards program, *see id.* § 6.1. When the cardholders make purchases, Banco Santander awards them AAdvantage miles. *See id.* §§ 9.1-9.2, 9.5. These miles can be redeemed for flights on American Airlines, as well as for other goods and services. Compl. ¶ 6. The bank pays the airline for every mile awarded. *See* Participation Agreement § 12.1.

The parties' contract includes a revenue guarantee for the airline. Under that provision, Banco Santander agreed to purchase a minimum number of reward miles every year—no matter how many miles its cardholders earn. *See id.* § 13.1. The minimum number of miles escalates

2

over the life of the agreement, as does the rate per mile that the bank must pay. *See* Compl. ¶¶ 19-20.

American Airlines is obligated to sell AAdvantage miles to Banco Santander at specified rates. Participation Agreement § 6.8. But the agreement specifies that American Airlines "shall not be deemed to have made any representation, warranty or covenant or have assumed any obligation or indemnification to [Banco] under this Agreement with respect to flight activity, including any suspension, reduction or termination of flights by an [American Airlines] carrier." *Ibid.*

The parties' contract permits Banco Santander to terminate the agreement under certain conditions. The bank may end the agreement "by providing written notice to American [Airlines]" if "pursuant to Section 23 American [Airlines] delays performance or fails to perform due to a Force Majeure Event, and such delay continues for a period of ninety (90) days." *Id.* § 20.4.5. Section 23, in turn, defines a "Force Majeure Event" as "any act of God, war, strike, labor dispute, work stoppage, fire, act of government, act or attempted act of terrorism or any other cause, whether similar or dissimilar, beyond the control of that Party, including, with respect to American, and without limitation, any incident, accident or hijacking or attempted hijacking involving any aircraft of American or any of its Affiliates or any other airline carrier." *Id.* § 23; *see id.* § 1.

Banco Santander may also terminate the agreement if American Airlines' market share in Brazil drops significantly. In particular, a provision entitled "Cessation of Services" allows Banco Santander to terminate the agreement upon timely written notice "[i]f American's Market Share during . . . a calendar year is reduced by 50% or more relative to the 2016 calendar year." *Id.* § 20.4.6. The agreement defines "Market Share" as "available seats on flights operated by American between Brazil and the United States divided by the sum of available seats on Delta

3

[Airlines], United [Airlines,] and American [Airlines] between Brazil and the United States as reported by Diio," which tracks flight frequencies. *Id.* § 1 ("Market Share").

### 2. The COVID-19 Pandemic

On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. *See* Compl. ¶ 23. Two days later, the United States declared a national emergency. *Ibid.* The following week, the Department of State advised American citizens "to avoid all international travel due to the global impact of COVID-19." *Id.* ¶ 24.

Brazilian states began to issue shelter-in-place orders by late March. *Id.* ¶ 26. By May, several Brazilian cities had instituted total lockdowns. *Id.* ¶ 27. On May 24, 2020, as Brazil's COVID-19 outbreak grew, President Donald J. Trump suspended entry into the United States for "all aliens who were physically present within the Federative Republic of Brazil during the 14-day period preceding their entry or attempted entry into the United States." *Id.* ¶ 28.

American Airlines has acknowledged in public filings that the COVID-19 pandemic has led to an "unprecedented," *id.* ¶ 30, and "precipitous" decline in the demand for air travel, *id.* ¶ 31. The airline took "aggressive actions" in response. *Id.* ¶ 30. It has significantly reducing flight capacity, *ibid.*, and beginning on March 29, 2020, it temporarily suspended all flights between Brazil and the United States *see id.* ¶ 29.

### 3. Banco Santander's Termination Letter

Ninety-two days after American Airlines suspended flights between Brazil and the United States, Banco Santander sent a letter to the airline purporting to terminate the parties' agreement. *See* Pl.'s Ltr. Re: *AAdvantage Program Participation Agreement* Ex. B (Dkt. #1-4). The letter contended that the bank had the right to terminate based on the *force majeure* termination provision governing situations in which the airline failed to perform or delayed performance under the contract for at least 90 days. That provision was triggered, the bank wrote, because "American

4

stopped air travel between the United States and Brazil . . . due to the low demand caused by the ongoing COVID-19 global pandemic" and had "not resumed flights between the two countries for over 90 days." *Id.* at 1.

American Airlines disputed the bank's right to terminate the agreement. *See* Def.'s Ltr. Re: *AAdvantage Program Participation Agreement* Ex. 1 (Dkt. #23-3). It argued that American Airlines "has neither delayed nor failed to perform . . . any of its obligations" under the agreement. *Id.* at 1.

### B.     Procedural History

Banco Santander filed this action on July 10, 2020, to resolve the dispute between the parties. *See* Compl. at 16. The first count in the complaint requests a declaratory judgment "that the Agreement has been terminated effective June 29, 2020"—*i.e.*, 90 days after American's last flight between the United States and Brazil—"pursuant to the force majeure termination provision of the Agreement." *Id.* ¶ 44.

The second count requests, in the alternative, a declaratory judgment that Santander is excused from further performance under the common-law doctrine of frustration of purpose. *Id.* ¶¶ 45-54. This portion of the complaint alleges that "[a]t the time the parties negotiated and entered into the Agreement, the parties did not foresee that a pandemic would disrupt all air travel worldwide and lead American Airlines to cease air travel between the United States and Brazil." *Id.* ¶ 46. It alleges that the cessation of flights "destroyed the underlying reason for" the bank "to continue performing the Agreement." *Id.* ¶ 47. Further, it alleges, the "significant decrease in the demand for air travel for an indeterminate amount of time" has rendered the miles "significantly less desirable to Brazilian cardholders than before the COVID-19 pandemic." *Id.* ¶ 49. It contends that even after flights resumed, "the effects of the COVID-19 pandemic likely will continue to have a fundamental impact on the desirability of air travel between the United States and Brazil

5

for the foreseeable future." *Ibid.* And it asserts that "continuing to perform the Agreement will cause [the bank] to incur millions of dollars in losses by purchasing AAdvantage Miles that are effectively valueless." *Id.* ¶ 48.

American Airlines has moved to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Def.'s Notice of Mot. at 1 (Dkt. #23). As to the first count, the airline argues that the *force majeure* termination provision does not apply because the airline did not "delay[] performance or fail[] to perform" any contractual obligation when it suspended service. *See* Mem. in Supp. of Def. American Airlines, Inc.'s Mot. to Dismiss Pl.'s Compl. at 1-2 (Dkt. #23-1) ("Def.'s Mem. in Supp.") (brackets in original). As to the second count, the airline argues that the agreement was not frustrated by an unforeseeable event because the agreement "expressly contemplate[d] the possibility that American [would] suspend, reduce, or terminate flights to Brazil." *Id.* at 2-3.

## STANDARD OF REVIEW

In a declaratory judgment action, as in any other, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Id.* at 558. A court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

## DISCUSSION

American Airlines' motion to dismiss is granted in part. The first count of the complaint is dismissed because Banco Santander has failed to state a claim under the contract's *force majeure* termination provision. That provision applies only if American Airlines "delays performance or

6

fails to perform due to a Force Majeure Event." Participation Agreement § 20.4.5. The bank has not alleged that the airline delayed performance or failed to perform because contrary to the bank's arguments, maintaining flight service between the United States and Brazil is not among the airline's contractual duties.

The second count of the complaint survives because Banco Santander has adequately pleaded that the COVID-19 pandemic was an unforeseen event whose impact on air travel has rendered the parties' contract essentially valueless to the bank. American Airlines argues that this claim should be dismissed because the parties' contract shows the parties foresaw the possibility that American would suspend flights between the United States and Brazil and allocated that risk to the bank. But Banco Santander has adequately alleged that the worldwide disruption of the airline industry and the decline in demand for air travel—rather than simply American Airlines' suspension of flights—are what made the agreement valueless. Banco Santander's frustration-of-purpose argument is thus not properly dismissed based on the airline's foreseeability argument.

## I. Banco Santander is not entitled to terminate the agreement under the *force majeure* termination provision.

Banco Santander has not stated a claim that it is entitled to terminate the agreement pursuant to the *force majeure* termination provision. Under New York law, which the parties agree governs, an agreement is "enforced according to the plain meaning of its terms" if the agreement is "complete, clear, and unambiguous on its face." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002)). A contractual claim that is unambiguously foreclosed by the parties' agreement may be disposed of through a motion to dismiss. *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 13 (2d Cir. 2019).

7

Here, the parties' contract unambiguously forecloses the bank's claim that the airline triggered the *force majeure* termination provision through a suspension of flights. That termination provision applies only if American Airlines "delays performance or fails to perform due to a Force Majeure Event" for at least 90 days. Participation Agreement § 20.4.5. Banco Santander does not suggest that flying between Brazil and the United States is among the duties the contract expressly requires the airline to perform. Instead, the bank argues that the contract *implicitly* requires American Airlines to continue flights. But this argument runs aground on the contract's disclaimer of any such obligation. The contract flatly states that the airline "shall not be deemed to have made any representation, warranty or covenant or to have assumed any obligation . . . to the Bank under this Agreement with respect to flight activity, including any suspension, reduction or termination of flights by an AA Carrier." *Id.* § 6.8. This broad and unequivocal statement foreswearing obligations "with respect to flight activity" makes clear that the airline has not undertaken any obligation to continue flights between the United States and Brazil.

Banco Santander's alternative reading of this disclaimer provision is unpersuasive. The bank contends that the provision merely permits American Airlines to change its "mix of flight routes over time" by adding or subtracting individual flights or routes. Opp'n to Def.'s Mot. to Dismiss the Compl. at 14 (Dkt. #26) ("Pl.'s Opp'n). In contrast, the bank contends, the provision does not bear on whether the airline may "cease[] to fly between the United States and Brazil altogether, or substantially constrict[] service for an indeterminate period." *Ibid.* But that is not a tenable reading. An obligation to maintain flights between the United States and Brazil would obviously be an "obligation . . . with respect to flight activity." And the agreement disclaims *any*

8

obligation "with respect to flight activity," including *any* suspension or termination of flights—not just obligations concerning individual flights or routes.

The contract's explicit renunciation of flight obligations forecloses Banco Santander's argument for an implied contract term. A court "may supply a missing term in a contract"—"extremely reluctant[ly]"—only if "the contract is ambiguous." *In re World Trade Ctr. Disaster Site Litig.*, 754 F.3d 114, 123-24 (2d Cir. 2014). Here, the parties unambiguously stated that American Airlines airline had not assumed any duty to fly. Accordingly, this contractual claim cannot get off the ground. The first count of Banco Santander's complaint is dismissed.

## II. Banco Santander has stated a claim based on frustration of purpose.

American Airlines' motion to dismiss the second count of Banco Santander's complaint is denied. The bank has adequately pleaded frustration of purpose. The frustration-of-purpose doctrine permits a party to stop performing under a contract when a "wholly unforeseeable event renders the contract valueless" to that party. *Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 29 (2d Cir. 2018) (summary order) (quoting *United States v. Gen. Douglas MacArthur Senior Vill., Inc.*, 508 F.2d 377, 381 (2d Cir. 1974)); *cf. PPF Safeguard, LLC v. BCR Safeguard Holding, LLC*, 85 A.D.3d 506, 508 (N.Y. App. Div. 2011) (frustration of purpose applies when "a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract") (quoting Restatement (Second) of Contracts § 265 cmt. a (Am. L. Inst. 1981)).

Banco Santander adequately pleads such frustration. The bank alleges that the COVID-19 pandemic was an event unforeseen by the parties that both "disrupt[ed] all air travel worldwide and le[d] American Airlines to cease all air travel between the United States and Brazil." Compl. ¶ 46. It alleges that the pandemic had a "fundamental" impact on the desirability of air travel between the United States and Brazil, *id.* ¶ 32, because it led to government travel restrictions, *id.*

9

¶¶ 27-28, reductions in airline capacity, *id.* ¶ 33, and "a general reluctance to travel," *id.* ¶ 32. Indeed, the bank notes that American Airlines itself has acknowledged that the pandemic created an "unprecedented" and "precipitous" decline in the demand for air travel. *Id.* ¶ 31. The bank alleges that the consequences of an unforeseeable global pandemic have rendered the contract valueless to the bank. *Id*. ¶¶ 47-49.

Contrary to the airline's arguments, this claim cannot be dismissed at the very outset of the case on foreseeability grounds. Determinations of foreseeability turn on the "[a]pplication of a legal standard to facts." *United States v. Ekwunoh*, 12 F.3d 368, 372 (2d Cir. 1993) (Newman, J., concurring). Accordingly, foreseeability may be determined as "a question of law" only when the facts bearing on foreseeability "are not in genuine dispute." *Wilson v. Glenro, Inc.*, 524 F. App'x 739, 740 (2d Cir. 2013) (summary order). Here, the airline does not argue that the COVID-19 pandemic was foreseeable. But it contends that the parties' contractual disclaimer of flight obligations establishes that the parties foresaw and accounted for the risk that the airline might suspend flights between the United States and Brazil. That argument fails to justify dismissal at this stage because, fairly read, the complaint argues that a confluence of factors stemming from the COVID-19 pandemic rendered the contract valueless—including not just the suspension of flights, Compl. ¶¶ 47-48, but also a broader decimation of air-travel demand, *id.* ¶ 49. Even if one link in the chain of events on which the bank relies was foreseen by the parties—the suspension of flights—it would be inappropriate to dismiss a frustration-of-purpose claim that also relies in substantial in part on other, assertedly unprecedented events. *Cf. Matter of Fontana D'Oro Foods, Inc.*, 472 N.Y.S.2d 528, 532-33 (N.Y. Sup. Ct. 1983) (concluding that frustration of purpose excused a party from completing the purchase of a business when a fire had destroyed the business's warehouse and inventory, and an insurer refused to pay the resulting claim, because

10

even though "the parties anticipated the possibility that a fire could destroy the[] warehouse," "[w]hat could not have been foreseen[] was the possibility . . . that the insurance carrier would withhold payment of the corporation's [insurance] claim"), *rev'd on other grounds*, 107 A.D.2d 808 (N.Y. App. Div. 1985), *reversal upheld on still other grounds*, 482 N.E.2d 1216 (N.Y. 1985). Accordingly, the terms of the agreement do "not resolve the parties' factual dispute regarding the foreseeability of the Covid pandemic at this early stage of the litigation to warrant dismissal [of] [p]laintiff's frustration of purpose cause of action as a matter of law." *1877 Webster Ave. Inc. v. Tremont Ctr., LLC*, 148 N.Y.S.3d 332, 338 (N.Y. Sup. Ct. 2021).

At oral argument on the motion to dismiss, American Airlines attacked a separate aspect of Banco Santander's frustration-of-purpose claim: the bank's assertion that the contract has been rendered valueless. The airline argues that, at the very least, the bank receives some valuable benefits under the contract because its customers obtain miles that can be redeemed for air travel and for certain other purchases. *See* Tr. of Oral Arg. 34-37 (Aug. 19, 2021). That argument has intuitive appeal. But an assessment of whether frequent flier miles are currently "effectively valueless," Compl. ¶ 48, require at least some evidence. And in any event, a contention "raised for the first time at oral argument" comes too late to support a motion to dismiss. *Gao v. Barr*, 968 F.3d 137, 141 n.1 (2d Cir. 2020).

11

## CONCLUSION

American Airlines' motion to dismiss is granted in part and denied in part. The first count of the complaint is dismissed with prejudice. Given the terms of the parties' contract, any amendment to that claim would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The second count of the complaint survives.

SO ORDERED.

                                                         /s/ Rachel Kovner
                                                    RACHEL P. KOVNER
                                                    United States District Judge

Dated:        October 15, 2021
                Brooklyn, New York